UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARTHUR SLAVEN, JOHN MCLINDEN, and LAURENCE ASHKIN, ) ) ) Plaintiffs, ) ) v. ) ) GREAT AMERICAN INSURANCE ) COMPANY, ) ) Defendant. ) ) | CIVIL ACTION NO.: 1:13-cv-1370 HON. CHARLES NORGLE |

### DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Resolution of this motion turns on answers to two straightforward questions: (1) does Paragraph 18 of the Arons Complaint allege an Employment Practices Wrongful Act within the meaning of the Great American Policy; and (2) if so, is the Arons Complaint a Claim *for* an Employment Practices Wrongful Act.[1] In its memorandum in support of its motion to dismiss, Doc. 11-1 ("Mem."), Great American argued that both questions must be answered in the negative. Plaintiffs' opposition brief, Doc. 16 ("Opp."), makes no persuasive argument to the contrary. Instead, it mischaracterizes the allegations of Paragraph 18; wrongly accuses Great American of "shifting reasons for its refusal," *id.* at 4; and relies on a standard for punitive damages that not only is wholly unsupported by Illinois law, but is directly refuted by Seventh Circuit and Illinois Supreme Court authorities, including cases on which Plaintiffs rely.

---

[1] All capitalized terms used and not otherwise defined in this Reply Memorandum have the meanings ascribed to them in Great American's Memorandum in Support of Defendant's Motion to Dismiss (Doc. 11-1).

Great American has argued that Paragraph 18 of the Arons Complaint alleges not misrepresentation, but a dispute between Plaintiff Slaven and Arons regarding Arons' claim to compensation. Great American has also argued that Paragraph 18 does not allege harassment—only, at best, that Plaintiffs may have refused to pay Arons the money owed her while harboring an intent to harass her.[2] Plaintiffs have not responded to these arguments except by repeating and then mischaracterizing the language of Paragraph 18.

While Plaintiffs may be correct that the Policy covers Claims for specified conduct, not just Claims for particular causes of action, Opp. at 10, this is of no significance to the Court's inquiry on this motion. As Great American argued in its opening brief and explains further below, the Arons Complaint does not allege that Plaintiffs engaged in any of the conduct covered by the Policy (i.e., Employment Practices Wrongful Acts).

Moreover, even if Paragraph 18 of the Arons Complaint could be read as alleging harassment or misrepresentation (and it cannot), the fact remains that the Arons Complaint is not a Claim *for* workplace harassment or employment-related misrepresentation. Plaintiffs counsel the Court against overly legalistic interpretations of the Policy and the Arons Complaint, but then resort to hyper-technical (and unsupported) interpretations of both in their attempt to bring the Arons Action within coverage. In any event, Plaintiffs' novel argument that Arons' prayer for punitive damages could be supported only by proof of harassment or misrepresentation—thereby (according to Plaintiffs) transforming a complaint for breach of contract, tortious interference with contract, violation of the Wage Act, and breach of fiduciary duty into a claim *for*

---

[2] Paragraph 18 alleges in the disjunctive that Plaintiffs refused to pay Arons with the intent to secure for themselves the underpayment *or* with the intent to annoy her *or* to harass her *or* to oppress her *or* to hinder her *or* to delay her *or* to defraud her.

harassment or misrepresentation—is not an accurate statement of Illinois law. Indeed, allegations of misrepresentation are insufficient for recovery of punitive damages in Illinois. A fair reading of the Arons Complaint, affording the allegations their "ordinary and popular meaning" as urged by Plaintiffs, results in the inescapable conclusion that the Arons Complaint is not a Claim for harassment or misrepresentation.

Because the Arons Complaint does not contain any allegation of an Employment Practices Wrongful Act and does not set forth any Claim for an Employment Practices Wrongful Act, the Policy provides no coverage for the Arons Action. Absent coverage, there can be no breach of contract or violation of the Insurance Code. Accordingly, Great American asks the Court to dismiss Plaintiffs' complaint with prejudice.

**I.    PLAINTIFFS MISCHARACTERIZE THE LEGAL STANDARDS GOVERNING THIS DISPUTE; THE DUTY TO DEFEND IS NOT AT ISSUE.**

In an effort to impose an inapplicable standard on this litigation, Plaintiffs misleadingly quote the Policy's "duty to defend" provisions, Opp. at 4, and cite case law regarding standards applicable to the duty to defend, Opp. at 8 ("if any part of the Arons Complaint alleged a claim potentially within the coverage of the Policy, Great American had a duty to defend the entire case"). *See also* Opp. at 13 ("the Great American Policy includes a duty to defend"). The Policy's duty to defend provisions, however, are irrelevant to this coverage dispute, and should be disregarded by the Court, because Plaintiffs assumed their own defense. As noted in Great American's Memorandum, the Policy gives Insureds the option and the right to assume their own defense. Mem. at 4. Plaintiffs chose voluntarily to exercise this right, prior to even notifying Great American of the Arons Action, thereby relieving Great American of any duty to defend. Plaintiffs' opposition brief does not address this point. As Great American explained in its

Memorandum, Great American's obligation under such circumstances is to advance Costs of Defense, *provided* the Claim is covered and Great American and the Insureds have agreed upon the portion of Costs of Defense attributable to covered Claims. Mem. at 12. This standard for advancement of Costs of Defense governs the present coverage dispute, not the "potential coverage" standard espoused by Plaintiffs.

## II. THE ARONS COMPLAINT DOES NOT ALLEGE AN EMPLOYMENT PRACTICES WRONGFUL ACT.

Plaintiffs maintain that the Arons Complaint is covered by the Policy because (they contend) Paragraph 18 of the Arons Complaint alleges an "employment related misrepresentation" and "workplace harassment." This is not true as a matter of law.

### A. The Arons Complaint Does Not Allege an Employment Related Misrepresentation.[3]

Paragraph 18 of the Arons Complaint does not allege misrepresentation. Plaintiffs' contrary argument focuses on Arons' allegation that Plaintiff Slaven "falsely denied the amount and validity of Arons' claims to her final compensation."[4] Compl. ¶ 18 (citing Arons Complaint ¶ 18). Slaven's alleged false denial of the amount and validity of Arons' compensation claims, however, does not constitute "misrepresentation" under Illinois law. Rather, as Plaintiffs affirmatively acknowledged in their opposition brief, it refers to a dispute between Slaven and

---

[3] Plaintiffs' statement that "Great American concedes . . . that paragraph 18 of the Arons Complaint alleged that the Slaven Group misrepresented the compensation due Arons . . . .," Opp. at 3, mischaracterizes Great American's position and is belied by Great American's Memorandum. *See* Mem. at 11 (arguing, under the section heading "Paragraph 18 of the Arons Complaint Does Not Allege Misrepresentation," that "the Arons Complaint does not even include an allegation of an actual Employment Practices Wrongful Act"). Moreover, the disputed allegation in Paragraph 18 pertains to Plaintiff Slaven only, not the "Slaven Group."

[4] As noted above, Plaintiffs do not argue that the Arons Complaint contains any allegation of misrepresentation with respect to Plaintiffs other than Slaven (although Arons sought punitive damages from all three Plaintiffs).

Arons over her compensation. Opp. at 5 ("Arons and the Slaven Group were not able to reach an agreement regarding the compensation she claimed she was owed"). If this were sufficient to constitute an allegation of misrepresentation within the meaning of the Policy, then essentially every disagreement over compensation owed an employee would become a claim for misrepresentation covered by the Policy if the parties discussed their dispute before litigation.

In its Memorandum, Great American discussed the elements of a claim for misrepresentation to show the great divide between the allegations in Paragraph 18 and the type of conduct covered by the Policy, not to contend, as Plaintiffs mischaracterize Great American's argument, that the Policy's coverage turns on causes of action rather than conduct.

### B. The Arons Complaint Does Not Allege Workplace Harassment.

Referencing the plain language of the Arons Complaint, Great American noted in its Memorandum that Paragraph 18 of the Arons Complaint alleged that Plaintiffs refused to pay money owed to Arons "with the intent to secure for [themselves] or others the underpayment or with the intent to annoy, harass, oppress, hinder, delay or defraud Arons." Mem. at 10 (quoting Compl. ¶ 43; Ex. 7, Arons Compl. ¶ 18). Pointing out what should be readily apparent, Great American argued that this is not an allegation of conduct at all, much less an allegation of workplace harassment—only, at best, alternative allegations of the intent Plaintiffs may have harbored when they refused to pay Arons the compensation she claimed was owed. *Id.* It is telling that Plaintiffs never address this point.

Plaintiffs correctly state that the Policy provides coverage for specified conduct. Opp. at 10. The Policy, however, does not provide coverage for thoughts, motivation, or intent. Just as it did with respect to misrepresentation, Great American discussed the basic elements of a claim for harassment in its Memorandum to show the stark contrast between the type of conduct

amounting to workplace harassment and Arons' much more narrow allegations. In short, because the word "harass" in Paragraph 18 describes Plaintiffs' possible intent, not their conduct, the Arons Complaint does not allege "workplace harassment."

### III. THE ARONS ACTION IS NOT A CLAIM FOR EMPLOYMENT PRACTICES WRONGFUL ACTS.

Great American has also argued that, even if Paragraph 18 of the Arons Complaint were construed to include an allegation of misrepresentation or harassment, the Arons Action was not a Claim *for* misrepresentation or harassment because it did not allege injury resulting from conduct constituting misrepresentation or harassment, did not seek damages for any misrepresentation or harassment, and did not seek recovery under any theory of misrepresentation or harassment. In their opposition brief, Plaintiffs responded by arguing that Arons' prayer for punitive damages in each count of the Arons Complaint necessarily required proof of misrepresentation or harassment. Opp. at 11-12. This argument, apparently created out of whole cloth, finds no support in Illinois law and is directly contradicted by controlling case law, including Plaintiffs' own authorities.

Plaintiffs repeatedly state that, at least in the context of the Arons' Action, punitive damages would be recoverable only upon proof of misrepresentation or harassment. Opp. at 3 ("punitive damages [are] a form of relief Arons could only recover if she proved Plaintiffs intentionally harassed or lied to her"); Opp. at 11 ("Punitive Damages . . . Could Only be Obtained by Proof of Intentional Harassment or Misrepresentation"); Opp. at 14 ("the Arons Complaint makes a claim for punitive damages that would only be recoverable only [sic] if Arons proved intentional harassment or misrepresentation"). Plaintiffs cite no authority for this novel contention, and there is none to be found in Illinois. Even if there were such authority,

6

however, Plaintiffs' logic is flawed. The Arons Complaint sought punitive damages from all three Plaintiffs on all four counts, but alleged that only Plaintiff Slaven "falsely denied the amount and validity" of Arons' compensation claims. Compl. Ex. 7, Arons Compl. ¶ 18. Therefore, Arons' punitive damage claims must have been founded on something other than this allegation.

Plaintiffs do cite two cases to support their argument on this point, but neither stands for the proposition that punitive damages are recoverable upon proof of misrepresentation or harassment, much less only upon such proof. First, they rely on *Stafford v. Puro*, 63 F.3d 1436, 1443 (7th Cir. 1995), for the proposition that "[p]unitive damages are recoverable when 'torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with gross negligence as to indicate a wanton disregard for the rights of others.'"[5] Plaintiffs accurately quote the opinion in *Stafford*, but that case does not support Plaintiffs' contention that punitive damages are recoverable only upon proof of misrepresentation or harassment. To the contrary, in holding that the record supported a punitive damages award, the *Stafford* court reviewed the evidence:

> Here, the evidence demonstrated that [defendant employer] Louis knew of Purofied's obligation to [plaintiff employee] Stafford long before receiving the letter from Stafford's attorney. [Employee's supervisor] Mesnik testified that he informed Louis of Stafford's memoranda [regarding unpaid compensation] throughout 1988 and Stafford himself sent one to Louis months before his termination. The jury reasonably could infer that Louis would have realized that such prolonged non-payment would cause serious financial difficulties for his employee. At termination, rather than pay Stafford the amounts undisputedly owed him and contest the remaining sums, Louis directed Mesnik to coerce

---

[5] *Stafford* quotes *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186 (1978), a decision recognizing a cause of action for retaliatory discharge for filing worker's compensation claims, but holding that punitive damages were improper, as the cause of action was novel and had not previously been recognized by the Illinois Supreme Court. *Kelsay* has no bearing on the present action.

7

> Stafford into relinquishing his rights in order to receive anything. Louis presented no reason for this behavior other than the avoidance of a future lawsuit, conduct that seems in gross disregard of Stafford's rights since he would not, by signing the release, obtain anything more than Purofied undoubtedly owed him. Illinois courts have upheld the award of exemplary damages in the face of coercive behavior.

*Id*. at 1443-44 (citations omitted). Absent from the record in *Stafford*, which the Seventh Circuit panel found sufficient to support an award of punitive damages, were any allegations of misrepresentation or harassment.[6] Instead, *Stafford* stands for the proposition that, under Illinois law, an employer's officer may be liable for punitive damages if he knew of the employer's obligation to an employee, delayed payment for a prolonged period, and attempted to convince the employee to accept a lesser amount than what was owed—all of which is alleged in the Arons Complaint. *See* Compl. Ex. 7, Arons Compl. ¶ 28 (Plaintiffs "knew that Centrum owed Arons final compensation under the Illinois Wage Act upon her termination"); ¶ 16 (Plaintiffs "failed and refused to pay Arons all sums due her"); ¶ 13 (Plaintiff Slaven told Arons that amounts owed her should be offset, contrary to their agreement, by a portion of the losses on Centrum projects).

Next, Plaintiffs cite *Girsberger v. Kresz*, 261 Ill. App. 3d 398, 411 (1st Dist. 1993), for the proposition that a plaintiff suing for violation of the Wage Payment Act and tortious interference with contract can recover punitive damages upon proper proof. Opp. at 11. As with *Stafford*, *Girsberger* does not support Plaintiffs' creative theory that punitive damages are recoverable only upon proof of misrepresentation or harassment. The *Girsberger* court did not

---

[6] The *Stafford* court ultimately vacated the punitive damages award and remanded for a new trial on the issue, finding that the amount of the punitive damages award was excessive and appeared to be based on improper considerations. It did not, however, rule that the award was error, only that the amount of the award was excessive, and offered the plaintiff a remittitur in lieu of remand. *Id.* at 1445.

8

so hold; indeed, the propriety of punitive damages was not even at issue in that case (because the defendant had waived the argument). The defendant challenged only the amount of the punitive award. *See id.* at 411. That a plaintiff who asserted two of the same causes of action as Arons was successful in obtaining a punitive award does not validate Plaintiffs' novel argument.

Offering some helpful clarity on the state of Illinois law on this point, the *Stafford* court explained that two panels of the Illinois Appellate Court have held that punitive damages are recoverable upon a showing "that the defendant acted intentionally and without just cause." 63 F.3d at 1443 (citing *Hill v. Names & Addresses, Inc.*, 212 Ill. App. 3d 1065 (1st Dist. 1991); and *Smith-Schrader Co., Inc. v. Smith*, 136 Ill. App. 3d 571 (1st Dist. 1985)).[7] *See also Glass v. Burkett*, 64 Ill. App. 3d 676, 683 (5th Dist. 1978) (affirming punitive damages award where the "actions, conduct and concealment by said Defendant . . . were intentional, and not in good faith, knowing and intending that the loss of the Co-Executors would be his gain"); *Merrill Lynch Business Financial Services Inc. v. Gray Supply Co.*, 1991 U.S. Dist. LEXIS 9241, *21 (N.D. Ill. July 9, 1991) (holding that a counterclaim that properly alleges intentional tort claims for tortious interference with contract and with prospective contractual advantage was sufficient to defeat motion to dismiss claim for punitive damages). In *Glass*, as in the Arons Action, the plaintiffs sought punitive damages for breach of fiduciary duty. The court affirmed the punitive damages award because the defendant had acted intentionally, in bad faith, and, importantly, "intending that the loss of the [plaintiffs] be his gain." 64 Ill. App. 3d at 683. Similarly here, Arons alleged that Plaintiffs "intended not to pay Arons the amounts due her so that there would be more money to distribute to themselves . . . ." Comp. Ex. 7, Arons Compl. ¶ 17. Thus, contrary to the

---

[7] The *Stafford* court also noted that the Illinois Supreme Court has not yet adopted this standard. *Id.* at 1443.

central premise of Plaintiffs' argument, there is controlling Illinois law holding that Arons could recover punitive damages by proving her allegations that Plaintiffs acted intentionally, without just cause, and to benefit themselves at Arons' expense. *See, e.g.,* Compl. Ex. 7, Arons Compl. ¶¶ 35-36 (alleging that Plaintiffs "intentionally induced and caused Centrum to breach its contract with Arons" by failing to pay her all amounts due her, and that Plaintiffs' conduct was "unjustified" because it was done solely for Plaintiffs' gain and was illegal under the Wage Act).

Moreover, not only are Plaintiffs wrong in arguing that allegations of misrepresentation are *necessary* for punitive damages, the Seventh Circuit has recognized that such allegations are not even *sufficient* to support recovery of punitive damages in Illinois. *See Kapelanski v. Johnson*, 390 F.3d 525, 534 (7th Cir. 2004) ("While deceit alone cannot support a punitive damage award, such damages may be allowed where the wrong involves some violation of duty springing from a relation of trust or confidence, or where the fraud is gross, or the case presents other extraordinary or exceptional circumstances clearly showing malice and willfulness.") (quoting *Home Savings & Loan Ass'n of Joliet v. Schneider*, 108 Ill. 2d 277 (1985)).

In sum, no Illinois case holds that proof of misrepresentation or harassment is necessary for recovery of punitive damages, nor is there any Illinois case holding such proof sufficient for recovery of punitive damages. Indeed, controlling authority holds that such proof is actually *insufficient* for recovery of punitive damages.

## IV. <u>CONCLUSION</u>

Plaintiffs have failed to refute Great American's arguments that the Arons Action does not allege an Employment Practices Wrongful Act and is not a Claim for an Employment Practices Wrongful Act. For these reasons, there is no coverage for the Arons Action under the

Policy, and Plaintiffs' claims for breach of contract and violation of the Insurance Code should be dismissed with prejudice.

Dated:  May 24, 2013

Respectfully submitted,

GREAT AMERICAN INSURANCE COMPANY

/s/ W. Joel Vander Vliet
Peter F. Lovato, III
W. Joel Vander Vliet
BOUNDAS, SKARZYNSKI,
  WALSH & BLACK, LLC
200 East Randolph Drive
Suite 7200
Chicago, IL  60601
(312) 946-4200

Attorneys for Defendant,
Great American Insurance Company

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of May, 2013, this document was filed through the Electronic Case Filing System of the United States District Court for the Northern District of Illinois and will be served electronically upon plaintiffs' counsel of record in this action: Stephen O'Donnell, Christopher J. Barber, Steptoe & Johnson LLP.

/s/ W. Joel Vander Vliet
W. Joel Vander Vliet

4843-7651-4580