IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ARTHUR SLAVEN, JOHN MCLINDEN and LAURENCE ASHKIN, | ) ) ) | |
|---|---|---|
| Plaintiffs, | ) ) | No. 13 C 1370 |
| v. | ) ) | Judge Norgle |
| GREAT AMERICAN INSURANCE CO., | ) ) | Magistrate Judge Cole |
| Defendant. | ) ) ) | |
| GREAT AMERICAN INSURANCE CO., | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ARTHUR SLAVEN, JOHN MCLINDEN and LAURENCE ASHKIN, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The question presented by this case is a recurring one in litigation between insurance companies and their insureds: to what extent documents generated in connection with a "coverage review" – a phrase with an elastic definition – by a lawyer hired by the carrier, are insulated from disclosure in discovery by virtue of the attorney/client privilege or the work-product doctrine. This inquiry, like all inquires involving claims of attorney/client privilege, is fact intensive, *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir.2000), and the outcome will vary depending on whether the outside lawyer hired by the carrier conducted or participated in the underlying factual investigation and/or made the ultimate coverage determination. For, in that event, the lawyer was acting not merely as a lawyer, but in essence, was performing the business function of being a claims

adjuster, claims process supervisor, or claims investigation monitor.

Faced with the question of the capacity in which an outside counsel was acting, some courts have found that a lawyer retained to provide coverage advice, who also performs the traditional functions performed by an insurance carrier in making a coverage determination, may nonetheless assert that all the lawyers' communications with the insurer are privileged. Illustrative is the California Court of Appeals' decision in *Aetna v. Superior Court*, 200 Cal.Rptr. 471, 476 (Ct. App. 1984), which holds that when an insurer retains outside counsel to investigate a claim by the insured and make a determination as to coverage, the privilege applies even to documents involving the attorney's investigative efforts since they are deemed indispensable to and a part of a coverage determination under the policy.

Other courts construe the attorney/client privilege more narrowly, emphasizing the nature of the actions of the attorney, rather than the broader relationship between the attorney and the insurer. Those courts hold that if the attorney performed an investigation or engaged in other conduct generally considered part of the insurer's ordinary business functions, or merely acted, in effect, as an outside claims adjuster, the attorney is not acting as a lawyer, and an insurer cannot shield the results of that investigation simply by having the attorney conduct the investigation or make the ultimate claims determination. While the answer to the question in these cases often eludes easy answer, it is not an all or nothing proposition as the plaintiffs seemingly assume when they say: "Because the Gordon Firm and Boundas Firm were, prior to the Arons Claim being denied, evaluating whether to accept to [sic] deny the claim, as well as performing other claim adjuster functions, the documents involving those attorneys and generated prior to September 4, 2009 claim denial are not protected by the attorney-client privilege." [Dkt. 89 at 10].

2

As the court of appeals explained in *In re Allen*, 106 F.3d 582 (4th Cir. 1997), while generally "no privilege attaches when an attorney performs investigative work in the capacity of an insurance claims adjuster, rather than as a lawyer," it is only "to the extent" attorneys acted as claims adjusters, a "pure, ordinary business function," that communications relating to the investigation are outside the protective ambit of the attorney/client privilege or the work-product doctrine. *Id.* at 602. *See also Lagestee-Mulder, Inc. v. Consolidated Ins. Co.*, 2010 WL 4781461, 1 (N.D.Ill. 2010)(Feinerman, J.); *Chicago Meat Processors, Inc. v. Mid–Century Ins. Co.*, 1996 WL 172148, at *3 (N.D.Ill. 1996)(Holderman, J.); and *infra* at 4. *See generally*, Michael Division and Dolores Parr, *Ethical Considerations in the Handling of Fidelity Claims*, 20 Fidelity Law Journal 305 (2014); Jerez Hill, Karen Hearn, and Steven Parker, *Recent Developments in Title Insurance Litigation*, 47 Tort Trial & Ins. Prac.L.J. 501 (Fall 2011) for a discussion of the issue and a large sampling of cases from across the country.

Ultimately, the answer to the question of whether a particular document is privileged and thus immune from discovery will depend on the law that controls the decision. Since "nothing is simpler than to make an unsubstantiated allegation," *Parko v. Shell Oil,* 739 F.3d 1083, 1086 (7th Cir. 2014), all jurisdictions adhere to the basic principle that it is the obligation of the party claiming privilege to show by competent *evidence* that it is entitled to the protection of the attorney/client privilege or work-product doctrine. *Shaffer v. American Medical Ass'n*, 662 F.3d 439, 446 (7th Cir. 2011); *Consolidation Coal Co. v. Bucyrus–Erie Co.,* 89 Ill.2d 103, 118–19 (1982); *Holland v. Schwan's Home Service, Inc.*, 992 N.E.2d 43, 84, (5th Dist.2013).

The plaintiffs insist that Great American has failed to sustain its burden of proof and thus virtually every document prepared by the two sets of lawyers retained in connection with the

Centrum claim is discoverable. The defendant is equally adamant that the documents that have been withheld are immune from discovery.

## A.

### 1.

The threshold question is what law governs the present dispute. As jurisdiction is based on diversity, the parties agree that Illinois law applies to questions of attorney/client privilege. [Dkt. # 89, at 6; Dkt. # 91, at 4-5]. *See* Fed.R.Evid. 501; *Dunn v. Washington County Hosp.*, 429 F.3d 689, 693 (7th Cir. 2005). In Illinois, as elsewhere, the general rule is that communications between an insurer and its outside coverage counsel are privileged. *See Ill. Emcasco Ins. Co. v. Nationwide Mut. Ins. Co.*, 393 Ill.App.3d 782, 913 N.E.2d 1102, 1106–08 (1st Dist. 2009). But, also in Illinois, as in many other states, "to the extent that an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney/client privilege does not apply." *Lagestee-Mulder, Inc.*, 2010 WL 4781461. *Accord*, *Great American Ins. Co. v. J. Aron & Co., Inc.*, 1995 WL 325652, 2 (S.D.N.Y.1995 )("Nor will the attorney/client privilege protect documents prepared by outside counsel hired to monitor the progress of a case to the extent that attorneys act as claims adjusters, claims process supervisors, or claims investigation monitor rather than legal advisors."); *Harper v. Auto-Owners Insurance Company,* 138 F.R.D. 655 (S.D. Ind. 1991).[1]

---

[1] This is but a particularized application of the broader principles that the attorney/client privilege only protects the communications between a client and a lawyer acting in the capacity of a legal advisor, *Rehling v. City of Chicago,* 207 F.3d 1009, 1019 (7th Cir.2000), and strategic manipulations of the privilege are prohibited. *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2nd Cir. 1993).

The public policy underlying this result is that insurance companies, which are in the business of reviewing, processing, and adjusting claims, should not be permitted to insulate from discovery documents and communications resulting from those aspects of routine claims review conducted by insurance carriers in the normal course of their business activities by delegating them to outside counsel. *See also Harper v. Auto-Owners Insurance Company,* 138 F.R.D. 655 (S.D. Ind. 1991)(documents prepared by outside counsel hired five days after fire to monitor progress of case and to conduct examination under oath of insureds were not subject to the attorney/client privilege to the extent that the attorney acted as claims adjuster, claims process supervisor, claims investigation monitor, and not as legal advisor).

Finally, while the attorney/client privilege protects communications between the carrier and outside counsel seeking or giving legal advice that refer to the otherwise discoverable documents, the documents referred to in the protected communication are, themselves, independently discoverable. *See Lee v. Chicago Youth Centers,* 2014 WL 2618537, 4 (N.D.Ill. 2014)(collecting cases); *Steele v. Lincoln Financial Group,* 2007 WL 1052495, at * 2 (N.D.Ill.2007).

**2.**

By contrast to analysis of attorney/client privilege claims, courts sitting in diversity consider the work-product doctrine not under Illinois law, but on the basis of federal law. *In re Professionals Direct Ins. Co.,* 578 F.3d 432, 438 (6th Cir. 2009)("The work-product doctrine is a procedural rule of federal law; thus, Federal Rule of Civil Procedure 26 governs this diversity case."); *Lagestee-Mulder, Inc. v. Consolidated Insurance Co.*, 2010 WL 4781461, 2 (N.D.Ill. 2010). The doctrine protects documents that an attorney or a representative of a party creates in anticipation of litigation in order to prepare or analyze the case. Fed.R.Civ.P. 26(b)(3); *Sandra T.E. v. South Berwyn Sch.*

*Dist. 100,* 600 F.3d 612, 618 (7th Cir. 2010). Its protection is "distinct from and broader than the attorney-client privilege." *United States v. Nobles,* 422 U.S. 225, 238 n. 11 (1975).

While a lawsuit need not be underway for the doctrine to apply, *Mattenson v. Baxter Healthcare Corp.,* 438 F.3d 763, 768 (7th Cir. 2006), "[t]he mere contingency that litigation may result is not determinative." *Id.*; *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 976-977 (7th Cir.1996). "'[S]ome articulable claim, likely to lead to litigation'" must have arisen that served as the primary motivating purpose behind the creation of a document claimed to be protected. *Sandra T.E.*, 600 F.3d at 622. *See also B.F.G. of Ill., Inc. v. Ameritech Corp.*, 2001 WL 1414468 at *3 (N.D.Ill. 2013)(Norgle, J.); *Tellabs Operations, Inc. v. Fujitsu Ltd.,* 283 F.R.D. 374, 388 (N.D.Ill. 2012). And that applies to attorney-led investigations when the documents at issue "can fairly be said to have been prepared or obtained because of the prospect of litigation." *Sandra T.E.*, 600 F.3d at 622.

This limitation on the doctrine is especially important in the context of litigation between an insurance carrier and an insured. In the normal course of an insurer's business, some number of claims for coverage will inevitably be denied. And out of that number, some fraction of disappointed insureds will sue, while in others, the carrier may initiate litigation. But that inevitability does not mean that the pre-denial activities of a carrier are, in every case, "in anticipation of litigation," within the meaning of Rule 26(b). *See Great American Ins. Co.,* 1995 WL 325652, 2. They are not. Thus, as a general rule, an insurance company's investigation 'undertaken to determine whether there is coverage, whether the claim should be paid, and whether a subrogation claim could be pursued, is not undertaken in anticipation of litigation. Quite the contrary. And while there is no Procrustean rule, generally, documents created before the insured is notified of a denial of a claim "simply reflect

6

the business that insurance companies do, namely investigating facts and determining whether those facts fall within policy coverage.'" *Lagestee-Mulder, Inc.*, 2010 WL 4781461, 2. *But see*, *One Place Condominium LLC v. Travelers Property Cas. Co. of America*, 2013 WL 788092, 4 (N.D.Ill. 2013) (although suit was not filed until 2011, by 2009 the insurance company could reasonably anticipate litigation based upon meetings and correspondence with plaintiff's counsel and the public adjuster).

**B.**

All jurisdictions adhere to the basic principle that the burden is on the party seeking to withhold material from discovery to demonstrate by competent evidence and with particularity that the attorney/client privilege or work-product applies to each document that is claimed to be privileged. *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003); *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991); *Oleksy v. General Elec. Co.*, 2011 WL 3471016, 3 (N.D.Ill. 2011). Blanket claims of privilege or conclusory assertions are insufficient to carry this burden. *White*, 950 F.2d at 430; *Moore v. Board of Trustees of Illinois Community College Dist. No. 508*, 2010 WL 4703859, 2 (N.D.Ill. 2010); *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 152 F.R.D. 132, 139 (N.D.Ill.1993); *see also* Fed.R.Civ.P. 26(b)(5); *Holland v. Schwan's Home Service, Inc.*, 992 N.E.2d 43, 84 (5th Dist.2013).

Since the privilege and the work-product doctrine, like all testimonial privileges and all exclusionary rules, makes the search for truth more difficult by preventing disclosure of what is often exceedingly relevant and probative information, they are narrowly construed, and limited to those instances where it is necessary to achieve their purposes. *See Pierce County, Wash. v. Guillen,* 537 U.S. 129, 144–145 (2003); *University of Pennsylvania v. EEOC,* 493 U.S. 182, 185 (1990); *Shaffer,* 662 F.3d at 446. Given Illinois' "strong policy of encouraging disclosure," it is "the privilege, not

the duty to disclose, that is the exception," and thus the privilege is construed "within its narrowest possible limits." *Waste Management, Inc. v. International Surplus Lines Insurance Co.,* 144 Ill.2d 178, 190, 579 N.E.2d 322, 327 (1991).

On the present briefing, a significant question is raised as to whether the defendant carried its burden. This is the second go around on this dispute. Originally, it was presented in a motion for a protective order from the defendant and in two different motions to compel from the plaintiff. As the Order of September 11, 2014 noted, the manner in which the parties chose to present the issues made it difficult to distill what documents are at issue. They filed over 100 pages of briefs and over 720 pages of exhibits, containing multiple and changing privilege logs. (Dkt. # 74, at 3).[2]

The September 2014 Order also faulted the practice of incorporating by reference other documents in the file. (Dkt. # 74, at 2-3).[3] Nonetheless, the defendant's response brief incorporated by reference the Declaration of Haralyn Isaac, Great American's Vice President of Claims, to support its privilege and work-product claims:

> Plaintiffs' position that these legal memoranda/opinions are discoverable rests exclusively on Plaintiffs' speculation that the Law Firms supplanted GAIC's internal claims handling functions. However, this factual predicate defies the uncontroverted declaration of Ms. Isaac. (*See the Isaac Declaration, ¶¶ 5-6, attached to the GAIC Motion for Protective Order, Dkt. 47, as Exhibit I.*) As fully described in Ms. Isaac's declaration, GAIC had a sophisticated internal claims department that managed its claims and did not defer to outside counsel its decision-making authority. Ms. Isaac made the ultimate decision on how to respond to the Arons I claim based upon her own investigation and the legal advice that the Law Firms rendered. (*Id.*, ¶ 7.) Ms. Isaac never deferred the authority she possessed for making coverage decisions to outside counsel.

---

[2] Not only that, but there had not been compliance with Local Rule 37.2 or Fed.R.Civ.P. 37(a)(1).

[3] The impediment that practice poses to efficient judicial assessment of briefs is obvious.

[Dkt. #91, at 6](parenthesis in original)(emphasis supplied).[4]

The claim that Great American had a "sophisticated" claims department appears three times in Great American's brief. (Response at 1, 6 [Dkt. #91]). But statements in briefs are not evidence. *Massuda v. Panda Exp., Inc.* 759 F.3d 779, 783-784 (7th Cir. 2014); *Lee,* 2015 WL 468879, 3 (collecting cases). The word "sophisticated" appears nowhere in the Declaration, which does not discuss the size, composition, or operation of the claims department. Finally, the Declaration says nothing about what the claims department did in connection with the Centrum claim. In short, on the question of the sophistication of Great American's claim department, or what it actually did in this case, "[t]he [Declaration's] silence is deafening." *Muhammad v. Oliver*, 547 F.3d 874, 877 (7th Cir. 2008).

Given the present record, which we discuss below, a significant question is raised as to the adequacy of the Great American's proof that it did not delegate to the Gordon & Rees and Boundas Skarzyski firms the business functions inherent in all claims determinations.

### C.

The case had its origins in a controversy Centrum had with one of its employees, Jennifer Arons. She sued Centrum and the plaintiffs herein, who were Centrum Properties officers, charging them with cheating her out of her just compensation. Centrum sent notice of her claim to AUSCO,

---

[4] The reference to Dkt. #47 is mistaken. That entry is not the defendant's motion for protective order, but the plaintiff's previous motions to compel. [Dkt. # 47]. Exhibit I of that filing is a brief email, not Ms. Isaacs Declaration. [Dkt. #47-2, at 4]. Defendant's previously filed motion for a protective order, docketed as entry number 44, not 47, is three short pages and does not include Ms. Isaac's Declaration. If we were to stop there, as perhaps we could since a court is not obliged to sift through an entire case file any more than it is obliged to sift through exhibits on behalf of counsel, *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510-11 (7th Cir. 2010); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991), there would be a serious question as to whether the defendant sustained its burden of proof. But that is a course we choose not to follow.

the agent for Great American Insurance Company, which was Centrum's insurer on October 24, 2008. [Dkt. #89-3 at 94].[5] On November 4, 2008, AUSCO's director of claims, Clint Wesolik, informed Centrum that he would be deferring consideration of coverage issues until he received certain documents he had asked the company to provide. Before those documents had arrived, Ms. Isaac told Mr. Wesolik she wanted to see what he thought after his investigation because the Arons claim "numbers look[ed] a little scary." [Dkt. #89-3, at 97 (January 20, 2009) ].[6]

When Mr. Wesolik received the Centrum documents just a few days later, he wrote to Ms. Isaac on January 30, 2009, enclosing "two binders of emails and other information [he had received] on this claim." Troubled by what he perceived to be the simultaneous inception of the policy and the firing of Ms. Arons by Centrum, he "recommend[ed] we refer this file to coverage counsel." [Dkt. #89-3 at 103]. And that is exactly what occurred. The two binders of documents received by Mr. Wesolik from Centrum were immediately sent to Mike Tone of the Gordon & Rees firm. [Dkt. # 89-3, at 105 (February 9, 2009); Dkt. # 89-3, at 108 (March 31, 2009)].

On February 12, 2009, Mr. Tone sent his legal opinion regarding the situation to Mr. Wesolik, who forwarded it to Ms. Isaac on the 13th. [Dkt. #89-3, at 4 and 115].[7] The record is silent as to what occurred between February 12 and March 26. But on the 26th, Great American sent the

---

[5] Neither the plaintiffs' nor the defendant's briefs discuss the relative and ordinary responsibilities of an insurance carrier and its broker in connection with the handling of a claim for coverage made by an insured.

[6] Mr. Wesolik's calculations of possible liability came to almost $30 million. [Dkt. #89-3, at 99]. Ms. Isaacs was "concerned about the cost of defense exposure if the insured's potential liability is as great as alleged by plaintiffs." [Dkt. #89-3 at 100 (January 20, 2009)].

[7] The email to Ms. Isaac says: "Attached please find the coverage opinion prepared by Mike Tone for...." The next word and the entire next line is redacted. *In camera* review, *see infra* at 15, reveals the reason for the redaction: the redacted words contain the legal advice given by Mr. Tone to the defendant.

matter to a second law firm, Boundas, Skarzyinski, Walsh & Black LLC, apparently for a further legal opinion. [Dkt. # 89-3, at 115]. No explanation is given for this decision in Ms. Isaac's Declaration. The plaintiffs hypothesize that Mr. Wesolik received a determination from the Gordon & Rees firm that the claim was covered. From this, they conclude that Great American went shopping for a second opinion that would support a denial of coverage of the claim. [Dkt. # 89 at 1].

Centrum kept calling for a decision, but was told the file had been sent out for a coverage review. [Dkt. # 89-3, at 120-121]. As of April 1, 2009, Mr. Lovato had not completed his work for defendant. [Dkt. # 89-3, at 124, 126]. An email from Centrum's insurance agent explained to Centrum that she had learned that defendant's "claim adjuster [] [wa]s clearly not making the decision," and that Centrum would instead be hearing from defendant's outside counsel about coverage. [Dkt. # 89-3, at 126 (April 1, 2009)].[8] By May 8, Mr. Lovato, had not responded to the carrier with an assessment of coverage, and Great American would only discuss the claim through him. [Dkt. #89-3 at 124 (May 8, 2009); Dkt. # 89-3 at 151 (May 7, 2009)].

The denial of Centrum's claim came on September 4, 2009 in a letter from Mr. Lovato in which he stated that he was providing on behalf of Great American its claim determination directly to Centrum. [Dkt. # 89-3, at 130]. [Dkt. #89, at Exs. F-I, L (at 3/23/09, 3/30/09, 4/17/09 & 5/5/09 entries), M-N, P (at 4/3/09, 4/15/09, 4/28/09, 4/29/09, 5/1/09, 5/4/09 entries) & Q-S]. This letter came after a request from Steptoe & Johnson to Mr. Lovato on June 26, 2009, asking him and Great American to advise them in writing "of the insurance company's position on coverage." [Dkt. #89-3

---

[8] The defendant correctly characterizes this statement as hearsay. *See* Rules 801(c) and 802, Federal Rules of Evidence. Apart from the evidentiary objection, the declarant does not say how she came to "learn" what she asserts. Consequently, it is impossible to have confidence in its reliability. See also Rule 602, Federal Rules of Evidence.

11

at 148].

**D.**

We turn then to the only evidentiary support accompanying the defendant's response to the Motion to Compel – Ms. Isaac's Declaration. The Declaration consists of eight laconic, single sentence paragraphs – one paragraph has 2 simple sentences. The Declaration is unsupported by any evidence or explanations or elaborations by Ms. Isaac. Each sentence is essentially conclusory and unexplained.

Ms. Isaac's Declaration states that as Vice President of claims at Great American, she had "primary responsibility" for handling the Centrum claim with help from Mr. Wesolik. "As part of [her] handling of the claim, [she] obtained legal advice from Gordon & Rees, LLP and Boundas Skarzynski Walsh & Black LLC." [Dkt. #46-8 at ¶5]. That advice was necessitated by "the complex legal issues [ ] and the significant potential exposure the claim posed." *Id*. at ¶6. Based on her "internal investigation and that of Mr. Wesolik, and considering the legal advice of the [two] Law Firms," Ms. Isaac " made the coverage determination under the policy for the [Centrum] claim" and "made the ultimate decision to deny coverage for the Centrum claim." *Id.* at ¶¶ 3, 7.

Ms. Isaac does not say what her investigation or that of Mr. Wesolik consisted. While she says that she conducted an "analysis" of the complex legal issues the claim raised, she does not say what those issues were, what her analysis consisted of or how she went about it. (Declaration, ¶6). Although she says that she conducted an "internal investigation" along with that of Mr. Wesolik, she does not attempt to explain what they did. (Declaration, ¶7). Nor does she attempt to dispel the inference arising from her hiring of the Boundas firm that Great American was shopping for an opinion favorable to it following the analysis from the Gordon firm. While Ms. Isaac states in a terse

12

footnote that the attorney at Gordon & Rees who provided legal advice to her left that firm and joined another firm, she does not explain the relationship between that event and her hiring of the Boundas firm. It is left to conjecture and speculation to link the two events. But that is not proof. *See In re Cohen*, 507 F.3d 610, 614 (7th Cir.2007); *Louth v. McCollum,* 424 F.3d 631, 634 (7th Cir.2005).

A careful review of Ms. Isaac's Declaration shows that, at least in part, all the defendant has done is "replace conclusory allegations of [a brief] . . . with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). This it cannot do, as all the cases hold that conclusory, unsupported statements in affidavits are insufficient. *See, e.g., Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 540-41 (N.D. Ill. 2000).*See also infra* at 14.[9]

In short, given the conclusory nature of Ms. Isaac's Declaration and the proof adduced by the defendants, it is at the very least, a close question whether Great American did anything with the Centrum claim beyond immediately passing it on to lawyers for their handling of every aspect of the investigation and analysis and disposition of the claim. Contrary to the defendant's implicit argument, I am not obligated to credit everything in the Isaac Declaration, especially when it is conclusory, unexplained, and contradicted at least seemingly by the objective evidence in the case. Indeed, it is the prerogative of any factfinder in any context "to disbelieve" even "uncontradicted" testimony unless other evidence shows that the testimony must be true." *Harvey v. Office of Banks and Real Estate,* 377 F.3d 698, 712 (7th Cir. 2004).

---

[9] By way of contrast, in *One Place Condominium LLC v. Travelers Property Cas. Co. of America*, 2013 WL 788092, 4 (N.D.Ill. 2013.), there were several "detailed and consistent" affidavits, including those of the lawyers who consulted with the insurance company. There was" no basis to disregard them." 2013 WL 788092 at 4-5.

**2.**

Finally, there is the unelaborated, single sentence statement in the Isaac Declaration that from not later than February 12, 2009 through September 4, 2009 when Great American denied coverage for Ms. Arons' suit against Centrum, Ms. Isaac "anticipated coverage litigation over the *Arons I* claim." (¶8). The apparent purpose of this assertion is to support a claim of work-product protection for the documents prepared by the Boundas firm. But it does no such thing. It is nothing more than a tendentious conclusion, unsupported by a single fact or even a semblance of an explanation from Ms. Isaac. Conclusory affidavits are insufficient, *Hendrix v. Borkowski*, 927 F.2d 607 at *2 (7th Cir. 1991), especially where the affiant is uniquely able to explain the reasons that led her to the conclusion articulated in the affidavit, based as they are on her personal knowledge. *Compare, United States v. Vrdolyak*, 593 F.3d 676, 679 (7th Cir.2010). Hence, the "single statement in [Ms. Isaac's Declaration] that " litigation was anticipated from a particular point in time falls "far short of establishing just when [defendant and its counsel] began creating work product in anticipation of litigation." *In re Smithkline Beecham Corp.,* 243 F.3d 565 (Fed. Cir. 2000). *See also Smithkline Beecham Corp.*, 193 F.R.D. at 540; *White*, 950 F.2d at 430; *Moore*, 2010 WL 4703859, 2; *Club Protector, Inc. v. JG Peta, Inc.*, 2001 WL 1217215, 4 (N.D.N.Y.2001); *Allendale Mut.*, 152 F.R.D. at 139; Fed.R.Civ.P. 26(b)(5).

February 12th was the date on which the Gordon firm finalized and sent its assessment to Mr. Wesolik. He forwarded it on to Ms. Isaac early the next morning. [Dkt. #89-3 at 115]. While one does not know the results of that assessment because Great American has refused to produce the document, the admitted facts show that it was not until that date that there could have been "some articulable claim, likely to lead to litigation [against Great American by Centrum]...." *Binks Mfg.*

*Co.*, 709 F.2d at 1119. Prior to that date, there was not the necessary "substantial and significant threat of litigation," which requires a showing of objective facts establishing an identifiable resolve to litigate. The fact that litigation ensues or that a party retains an attorney, initiates an investigation, or engages in negotiations over a claim, is not dispositive on the issue of whether litigation was anticipated. *Smithkline Beecham Corp.*, 193 F.R.D. at 540.

Prior to the 12th, and in the absence of a negative coverage determination, there was at most, a "mere contingency that litigation may result," which, in any event, "is not determinative." *Binks Mfg. Co.*, 709 F.2d at 1119. *Accord Logan,* 96 F.3d at 976-977. There was not before them a "substantial and significant threat of litigation." *Allen v. CTA*, 198 F.R.D. 495, 500 (N.D.Ill. 2001). Mere possibilities are never enough. *Tellabs Operations, Inc.*, 283 F.R.D. at 388.[10]

**D.**

In sum, based on the briefing, it is a close question – and, as it turns out, closer than it need be – whether Great American has sufficiently carried its burden of proof to warrant its assertion of attorney/client privilege and work-product protection over the documents prepared by the two law firms Great American sequentially hired to review the Centrum claim. But the Seventh Circuit has warned that privilege determinations ought not to be made without the judge first reviewing the questioned documents *in camera*. "'Only when the district court has been exposed to the contested

---

[10] See 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2024 (2d ed.1994):

> Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work-product immunity for documents prepared in the regular course of business rather than for purposes of the litigation.

15

documents and the specific facts which support a finding of privilege under the attorney-client relationship for each document can it make a principled determination as to whether the attorney-client privilege in fact applies.'" *American Nat. Bank and Trust Co. of Chicago v. Equitable Life Assur. Soc. of United States*, 406 F.3d 867, 880 n. 7 (7th Cir. 2005). *See also In re BankAmerica Corp. Secs. Litig.,* 270 F.3d 639, 644 (8th Cir. 2001); *In re Grand Jury Proceedings,* 220 F.3d 568, 571 (7th Cir.2000); *Holifield v. United States,* 909 F.2d 201, 204 (7th Cir.1990); *United States v. Tratner,* 511 F.2d 248, 252 (7th Cir.1975). After all, the responsibility of determining whether the privilege exists rests upon the judge and not upon the lawyer whose client claims the privilege. Where this evidence may be presented only by revealing the very information sought to be protected by the privilege, an *in camera* inspection of the evidence is appropriate. *American Nat. Bank and Trust Co. of Chicago,* 406 F.3d at 880.

Accordingly, I asked the defendant to provide me with copies of the materials from the two law firms and certain other related documents. They have done so.[11] Even the most cursory review of the materials provided reveals that the documents the defendant has withheld are covered by the attorney/client privilege and the report of the Boundas Skarzynski firm is covered by the work-product doctrine as well, as are its drafts of the letter which was sent to Mr. Slaven at Centrum Properties. While a number of the emails that have been withheld on the grounds of privilege or work-product protection do not fall within either category, they essentially are inconsequential and do nothing to sustain or undercut in the slightest either party's position in this case.

---

[11] The cover letters accompanying the documents appear at Dkt. ##102 and 103.

As previously noted, by email dated February 13th, Mr. Wesolik sent Mr. Gordon's coverage opinion for the Centrum claim to Ms. Isaac. (Bates Numbers GREAT000209-000221). It is a purely legal assessment of the claim. It details the results of AUSCO's coverage investigation as the factual basis on which the letter is based. It contains a section captioned "COVERAGE ANALYSIS," which is based upon Illinois case law, the policy issued to Centrum, and the allegations of the Arons lawsuit, which was then pending and for which coverage was sought by Centrum. It came to a number of conclusions precisely as one would expect a legal opinion letter to have done, and it discussed possible courses of action that could be pursued by Centrum. It is quite apparent that Mr. Tone and his firm were not acting in any capacity beyond that of a lawyer advising a client.

It is also clear beyond any doubt that given the recommendations and the analysis in Mr. Tone's February 12th letter, it was reasonable for Ms. Isaac to conclude that from that point on there was an "articulable claim, likely [certain is perhaps a more apt description here] to lead to litigation [between Great American and Centrum]...." *Binks Mfg. Co.*, 709 F.2d at 1119. *Cf., One Place Condominium LLC*, 2013 WL 788092, 4 (although suit was not filed until 2011, by 2009 the insurance company could reasonably anticipate litigation based on conversations with plaintiff's counsel and the public adjuster). A review of Mr. Tone's letter also conclusively dispels Centrum's hypothesis that Great American must have received an opinion favorable to Centrum. Precisely the opposite is true.

The *in camera* review of certain emails that have been withheld on the grounds of privilege and work-product protection confirm the above conclusions. They make clear beyond peradventure of doubt that Mr. Lovato and the Boundas Skarzynski firm were acting purely as legal advisors to Centrum and that they had no authority to make any final decision in connection with the Centrum

claim, nor did they attempt to. Several of the emails reflect counsel's attempts to schedule meetings so that they could give Ms. Isaac their legal advice, discuss alternative strategies, and "get [her] final direction." (Email, April 29, Bates Number.2009 BSWB000080). *See also* BSWB000089. (In an email to Ms. Isaac dated May 1, 2009, Mr. Lovato asks "did you come to a decision on how to proceed?").While these emails are not privileged since they do not involve the transmission of confidential information seeking or giving legal advice, they could not possibly, let alone reasonably, lead to the discovery of admissible evidence helpful to the plaintiffs. If anything, they circumstantially rebut the plaintiffs' contention that the lawyers were running the show and making all the decisions while Ms. Isaac and Great American were but passive observers, who had delegated all decision making to the lawyers.

Centrum has also provided at my request for *in camera* review, drafts of the letter that was ultimately sent from the Boundas Skarzynski firm to Mr. Slaven. They were prepared by the lawyers for their client in pursuit of their providing legal services and are thus protected from disclosure by the attorney/client privilege. *See Chevron U.S.A., Inc. v. United States,* 83 Fed.Cl. 195, 201 (Fed.Cl.2008); *Graff v. Haverhill North Coke Co.,* 2012 WL 5495514, 23 (S.D.Ohio 2012)(draft letters and documents may be protected by the attorney/client privilege even where the final letter or document is sent to third party).

The drafts in this case are also protected by the work-product doctrine since each confidential draft letter represents a step in the lawyers' evaluation of the legal problem under consideration and how best to handle it. It thus constitutes opinion work-product, "meaning 'the mental impressions, conclusions, opinions, or legal theories of an attorney....'" *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 976 n. 4 (7th Cir. 1996). For a sampling of cases supporting this conclusion *see Dyson, Inc.*

*v. Euro-Pro Operating LLC,* 2015 WL 1120006, 19 (N.D.Ill. 2015); *CH Properties, Inc. v. First American Title Ins. Co.,* 2014 WL 4854216, 6 (D.Puerto Rico 2014); *Inovation Ventures, L.L.C. v. Aspen Fitness Products, Inc.* 2014 WL 2763645, 3 (E.D.Mich. 2014); *Chevron U.S.A., Inc. v. United States*, 83 Fed.Cl. 195, 204, 313 (Fed.Cl. 2008); *Blue Lake Forest Products, Inc. v. United States*, 2007 WL 5161595, 21 (Fed.Cl. 2007).

E.

Attached to the plaintiffs' 14-page response brief was "Exhibit A." In reality, it is not an exhibit at all, but a 7-page, single-spaced brief containing legal argument about a number of the documents claimed to be privileged or protected. If the document were double-spaced, as briefs must be under our Local Rules, it would be more than 10 pages long, thus making the brief at least 24 pages in length. As no motion was made to exceed the 15- page limit prescribed by L.R. 7.1, the defendant argues Exhibit A should not be considered. [Dkt. # 92 at 10]. There is merit in the argument.

In varying contexts, courts have disapproved stratagems to avoid page limitations. One of the frequently employed devices to skirt a limit on the size of briefs is adoption by reference to other filings or documents. *See, e.g., THI of New Mexico at Valle Norte, LLC v. Harvey,* 527 Fed.Appx. 665, 671–72, 2013 WL 2435349, *6 (10th Cir.2013); *Swanson v. U.S. Forest Service,* 87 F.3d 339, 343 (9th Cir.1996). Another is simply captioning the excess pages as an exhibit. But labeling a brief an exhibit does not change the essential nature of the thing. *Cf.,Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins*., Co. 671 F.3d 635, 637 (7th Cir. 2011)("Abraham Lincoln once was asked how many legs a donkey has if you call its tail a leg. His answer was four: calling a tail a leg does not make it one."); *King v. Federal Bureau of Prisons*, 415 F.3d 634, 636-637 (7th Cir.

2005)(calling something a business doesn't make it a business).

This is not to say that the defendant was animated by some improper purpose. I am confident that was not the intent. Still, the effect was the same, and "exhibit A" will not be considered.

**CONCLUSION**

The plaintiffs' motion to compel [Dkt. # 89] is denied with this qualification: any document that reflects the results of an investigation of the underlying facts of the Centrum/Arons claim conducted by either the Gordon & Rees firm or the Boundas Skarzynski firm shall be produced. If such investigation results are contained in an otherwise privileged or protected document within the meaning of this Opinion, the document, appropriately redacted to protect privileged or protected material, shall be provided promptly to the plaintiffs.

**DATE:** March 18, 2015  _____
JEFFREY COLE